UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | | |
|---|---|---|
| STEVEN T. MARVIK,              ) | | |
| ) | | |
| Plaintiff,      ) | 3:11-CV-00655-LRH-WGC | |
| ) | | |
| v.                             ) | | |
| ) | ORDER | |
| DR. NEIGHBORS, et al.,         ) | | |
| ) | | |
| Defendants.    ) | | |

Before the Court is Plaintiff Steven T. Marvik's ("Marvik") Motion for Summary Judgment against Defendant Lorrie Oksenholt ("Oksenholt"). Doc. #73.[1] Oksenholt filed an Opposition (Doc. # 97), to which Marvik replied (Doc. #118).

Also before the Court is Defendant Oksenholt's Cross-Motion for Summary Judgment. Doc. #80. Marvik filed an Opposition (Doc. #103), to which Oksenholt replied (Doc. #115). Additionally, Marvik filed a Motion to Extend Time to File Exhibits to his Opposition. Doc. #104.

Also before the Court is Marvik's Motion to Strike Oksenholt's Motion for Summary Judgment. Doc. #93. Oksenholt filed an Opposition (Doc. #108), to which Marvik did not reply.

## I.   Factual Background

On March 7, 2011, Marvik was charged with making a bomb threat against the Peppermill Casino in Reno, Nevada in violation of Nevada Revised Statute 202.840. Doc. #81, Ex. B, p. 6.

---

[1] Refers to the Court's docket number.

On April 4, 2011, pursuant to a motion made by defense counsel, Marvik was ordered to undergo a mental examination to determine competency to stand trial. *Id.*, p. 10. Thereafter, Robert E. Hiller, Ph.D. and Bill Davis, Ph.D. found that Marvik was unable to assist his counsel due to his delusional thought content. *Id.*, pp. 12-19. Based thereon, and pursuant to Nevada Revised Statute 178.425(1), Marvik was remanded to Lake's Crossing Center for the Mentally Disordered Offender ("LCC") for detention and treatment on June 30, 2011. *Id.*, pp. 2-4. Marvik's criminal case was ultimately dismissed and he was released to the community on January 4, 2012. Doc. #82, Ex. E, p. 22.

Marvik filed his initial Complaint on September 12, 2011. Doc. #1. On October 13, 2011, the Magistrate Judge issued a Report and Recommendation (Doc. #6), which was adopted by the Court (Doc. #12), granting Marvik's request to proceed *in forma pauperis* and screening Marvik's initial Complaint. Marvik was allowed to proceed with his medical care claim under the Eighth Amendment against Defendant Oksenholt and co-Defendants Elizabeth Neighbors ("Neighbors"), Catherine Pearson ("Pearson"), and Tom Durante ("Durante"). Doc. #6, p. 8; Doc. #12, p. 2. The Court determined that no other federal constitutional claims were stated. *Id.* After Marvik was given leave to file an amended complaint, the Magistrate Judge issued a second Report and Recommendation (Doc. #25), which was adopted by the Court (Doc. #26), screening Marvik's First Amended Complaint (Doc. #19). Marvik was allowed to proceed on Counts I through III under the Eighth Amendment as to Defendant Oksenholt, and co-Defendants Neighbors, Pearson, Durante, and Steven Zuchowski ("Zuchowski")[2]. Doc. #25.

In Count I, the crux of Marvik's allegations is the denial of medical care by Oksenholt, which he asserts Neighbors, Durante, and Zuchowski knew about, but did nothing to rectify. Doc. #19, p. 4. In Count II, Marvik's allegations center around the conduct of Durante and Pearson in

---

[2] To date, Marvik has not properly served Zuchowski as directed by this Court in its March 20, 2013 Order granting Marvik's Motion to Extend Time. Doc. #66. Additionally, on May 30, 2013, the Court found that the time for serving Zuchowski had expired. Doc. #119.

1  relation to his medical care. Doc. #19, p. 4. Finally, in Count III, Marvik alleges that Pearson
2  failed to provide him with adequate medical care. Doc. #19, p. 6. He also references the
3  involvement of Neighbors, Zuchowski, and Oksenholt. *Id.* The Court essentially found that, with
4  respect to Counts I through III, Marvik stated a colorable claim for deliberate indifference to his
5  serious medical needs against Oksenholt, Neighbors, Durante, Pearson, and Zuchowski. Doc. #25.
6        The time for discovery in this matter expired on March 18, 2013. Doc. #56. On April 17,
7  2013, Marvik filed a Motion for Summary Judgment against Oksenholt. Doc. #73. On May 10,
8  2013, Oksenholt filed an Opposition. Doc. #97. On June 6, 2013, Marvik filed a Reply. Doc.
9  #118. On April 19, 2013, Oksenholt filed a Cross-Motion for Summary Judgment. Doc. #80. On
10 May 15, 2013, Marvik filed an Opposition. Doc. #103. On May 31, 2013, Oksenholt filed a Reply.
11 Doc. #115. On May 6, 2013, Marvik filed a Motion to Strike Oksenholt's Motion for Summary
12 Judgment as untimely. Doc. #93. On May 22, 2013, Oksenholt filed an Opposition, to which
13 Marvik did not reply. Doc. #108.

14 **II.    Legal Standard**

15       Summary judgment is appropriate only when the pleadings, depositions, answers to
16 interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record
17 show that "there is no genuine issue as to any material fact and the movant is entitled to judgment
18 as a matter of law." Fed. R. Civ. P. 56(a). In assessing a motion for summary judgment, the
19 evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the
20 light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio*
21 *Corp.*, 475 U.S. 574, 587 (1986); *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154
22 (9th Cir. 2001).
23       The moving party bears the initial burden of informing the court of the basis for its motion,
24 along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v.*
25 *Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the
26 moving party must make a showing that is "sufficient for the court to hold that no reasonable trier

1  of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259
2  (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

   To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the party's position is insufficient to establish a genuine dispute; there must be evidence on which a jury could reasonably find for the party. *See id.* at 252.

   Where, as here, parties filed cross-motions for summary judgment on the same claims, the Court must consider each party's motion separately and on its own merits. *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citations omitted). Accordingly, the Court must "consider the appropriate evidentiary material identified and submitted in support of both motions, and opposition to both motions, before ruling on each of them." *Id*. at 1134.

**III.   Discussion**

   As Oksenholt correctly avers, Marvik's right to receive adequate medical care while in the custody of LCC derives from the Due Process Clause rather than the Eighth Amendment. *See Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1187 (9th Cir. 2002) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)) (where plaintiff had not been convicted of a crime, but had only been arrested, his rights derive from the Due Process Clause, not the Eighth Amendment's protection against cruel and unusual punishment). Nevertheless, "[w]ith regard to medical needs, the [D]ue [P]rocess [C]lause imposes, at a minimum, the same duty the Eighth Amendment imposes:

4

1  'persons in custody ha[ve] the established right to not have officials remain deliberately indifferent
2  to their serious medical needs.'" *Id.* (quoting *Carnell v. Grimm*, 74 F.3d 997, 979 (9th Cir. 1996))
3  (applying the Eight Amendment standard where arrestee's rights derived from the due process
4  clause).

5  Proving deliberate indifference under the Eighth Amendment, "requires the defendant to be
6  *subjectively* aware that *serious* harm is likely to result from a failure to provide medical care." *Id.*
7  at 1193. "[A] plaintiff must satisfy both an objective standard—that the deprivation was serious
8  enough to constitute cruel and unusual punishment—and a subjective standard—deliberate
9  indifference." *Snow v. McDaniels*, 681 F.3d 978, 985 (9th Cir. 2012).  First, to establish the
10 objective prong, "the denial of a plaintiff's serious medical need must result in the 'unnecessary
11 and wanton infliction of pain.'" *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)). Second,
12 "a person is liable for denying a prisoner needed medical care *only* if the person 'knows of and
13 disregards an excessive risk to inmate health and safety.'" *Gibson*, 290 F.3d at 1187-88 (quoting
14 *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)) (emphasis added). "Mere negligence in diagnosing
15 or treating a medical condition, without more, does not violate a [plaintiff's] Eighth Amendment
16 rights." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *McGuckin v. Smith*, 974
17 F.2d 1050, 1059 (9th Cir. 1992)) (internal quotation marks omitted); *see also Wood v.*
18 *Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (even gross negligence is insufficient to
19 establish a constitutional violation); *Gibson*, 290 F.3d at 1189-91 (finding that the county's failure
20 to perform a medical evaluation of the arrestee to identify and respond to his urgent medical needs
21 in the face of "a plethora of circumstantial evidence" that the county was aware of a substantial risk
22 of serious harm suggests that the county intentionally ignored arrestee's serious medical condition).

23  **A.  Marvik's Motion for Summary Judgment**

24  Contrary to Marvik's assertion that he is entitled to summary judgment because
25 "[Oksenholt] has not provided any factual evidence to disprove she did not violate [his] rights
26 under the Eight Amendment for medical indifference," (Doc. #73, p. 1), Oksenholt need not offer

5

evidence to negate or disprove such allegations because it is Marvik, not Oksenholt, who bears the burden of proving the elements of his claims at trial. *See Celotex*, 447 U.S. at 323; *see also Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000) (if the moving party fails to carry its initial burden of production, the non-moving party has no obligation to produce anything). Here, Marvik has failed to produce any evidence to substantiate his claims that Oksenholt was deliberately indifferent to his serious medical needs. Nor has he demonstrated the absence of any genuine issue of material fact. Rather, his Motion for Summary Judgment is largely a recitation of his First Amended Complaint with obscure references to "legal evidence," of which the Court is unable to make sense.[3] Nevertheless, as the Court explains in Section B, Marvik's allegations, even if true, do not amount to a violation of his rights under the Due Process Clause. Accordingly, the Court finds that Marvik is not entitled to summary judgment on his claims against Oksenholt.

**B.     Oksenholt's Motion for Summary Judgment**

As the moving party without the ultimate burden of persuasion at trial, Oksenholt "has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co., Ltd. V. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). In order to carry her burden of production, Oksenholt must "either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate

---

[3] Marvik's submissions include the following: letters he wrote to Zuchowski, the Nevada Board of Medical Examiners, the Nevada Board of Examiners for Social Workers, the Nevada Disability Advocacy and Law Center, his treatment team at LCC, Pearson, and Durrant (Doc. #19); various medical records documenting examinations and treatment after he was released from LCC, none of which reference his care or lack thereof at LCC, a copy of various LCC policies, and his own medical requests and complaints to LCC (Doc. #105, Doc. #113); the "PSYOP Operations in the 21st Century" publication, letters from the Nevada Board of Medical Examiners and Psycological Examiners denying his requests for relief, letters written by Marvik to his Public Defender, the FBI, Internal Affairs, Homeland Security, and various other entities requesting information regarding the star wars technology and other matters of which the Court has no interest, and the web search results for "congressional records star wars technology" (Doc. #116).

1  burden of persuasion at trial." *Id.* (citing *High Tech Gays v. Defense Indus. Sec. Clearance Office*,
2  895 F.2d 563, 574 (9th Cir. 1990)).  Not only has Marvik failed to produce any evidence in support
3  of his claims against Oksenholt, his allegations, even if accepted as true, fall woefully short of
4  establishing the elements necessary to constitute a claim for deliberate indifference to a serious
5  medical condition.

6  <u>Count I</u>

7  In his First Amended Complaint, Marvik appears to assert that Oksenholt had not seen him
8  in four months, that Oksenholt refused to see him, that Oksenholt discontinued his medications
9  without an explanation, and that Oksenholt did not address his ongoing complaints of pain.  Doc.
10 #19, p. 4.

11 As to Count I, Marvik simply fails to provide any evidence that Oksenholt was subjectively
12 aware that serious harm was likely to result from a failure to provide medical care.  Despite his
13 complaints of pain, there is no indication in the record that his medical issues significantly affected
14 his daily activities or that he was in chronic or substantial pain.  *See McGlukin v. Smith*, 974 F.2d
15 1050, 1059-60 (9th Cir. 1997) (overruled on other grounds) (defining a "serious" medical condition
16 as one that "a reasonable doctor or patient would find important and worthy of comment or
17 treatment; the presence of a medical condition that significantly affects an individual's daily
18 activities; or the existence of chronic and substantial pain").  Quite the opposite, Marvik's records
19 document consistent socialization with peers and staff, performance of his job without incident, and
20 participation in physical and other recreational activities for the duration of his admission to LCC.
21 *See* Doc. #84, Ex. D (documenting progress notes on Marvik between July 12, 2011 and January
22 13, 2012).

23 Moreover, to the extent that Marvik's medical condition was serious—i.e., important and
24 worthy of comment or treatment—the record clearly indicates that he received around-the-clock
25 medical care by competent medical and psychological staff.  *See Gibson*, 290 F.3d at 1187 (to
26 satisfy their duty to provide adequate medical care, "jails must provide medical staff who are

7

'competent to deal with prisoners' problems'") (quoting *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982). Contrary to Marvik's assertions that Oksenholt failed to address his ongoing complaints of pain and discontinued his medication without explanation, the record is replete with evidence that Marvik's complaints were addressed by nurses and staff members and that Oksenholt herself prescribed medication, including pain medication, to address Marvik's complaints for the duration of his admission to LCC. *See* Doc. #81, Ex. C (documenting changes to Marvik's prescribed medications between July 17, 2011 and December 13, 2011); *see also* Doc. #109, Ex. F (Medication Administration Record documenting all of the medications, including pain medication, that Marvik received on a daily basis); *see also* Doc. #77, Ex. C (documenting Durant's responses to Marvik's complaints). While Oksenholt concedes that she only evaluated Marvik in person on two occasions, once on July 17, 2011 and again on November 20, 2011, the record is clear—she consistently reviewed his complaints and adjusted his medications accordingly. *See* Doc. #81, Ex. C. While Marvik may have been dissatisfied with the treatment he received, he was nevertheless able to participate in daily recreational activities and fulfill his work duties. *See* Doc. #84, Ex. D. As such, the Court finds that any deprivation in medical care that Marvik suffered while at LCC was not serious enough to constitute cruel and unusual punishment under the Eighth Amendment.

Furthermore, Marvik points to no authority suggesting that Oksenholt's response to his complaints amounted to deliberate indifference to his medical needs. Nor does Marvik cite to any evidence that raises a triable issue of fact as to whether Oksenholt's actions amounted to deliberate indifference. *See Gasaway v. Northwestern Mut. Life Ins. Co.*, 26 F.3d 957, 960 (9th Cir. 1994) (mere allegations or denials do not meet the opposing party's burden of showing a genuine issue of material fact). Instead, Marvik cites to the medical requests and complaints he filed while in the care of LCC and various medical records documenting his treatment *after* he was released from LCC. *See* Doc. #105, Ex. A - K. At most, these records evidence the fact that Marvik actually filed requests and complaints while in the care of LCC and that he continued to suffer from a number of medical conditions after his release from LCC. However, none of these exhibits

substantiate his claim that he was denied treatment while under the care of LCC or that Oksenholt knew of a substantial risk of harm and intentionally ignored Marvik's needs. *See Liberty Lobby*, 477 U.S. at 252 (the mere existence of a scintilla of evidence in support of the party's position is insufficient to establish a genuine dispute). Finally, Marvik's repeated averments that the medical records to which Oksenholt refers are inadmissible as "illegal," "biased," "prejudicial," "fradulent," and "purjurious," is unavailing. The Court finds that Oksenholt's evidentiary submissions to the Court would be admissible pursuant to Federal Rule of Evidence 803(6). As such, the Court finds that no reasonable jury could find in favor of Marvik and thus summary judgment in favor of Oksenholt on Count I is appropriate.

Count II

Marvik does not reference Oksenholt in Count II of his First Amended Complaint. *See* Doc. #19, p. 5. As such, the Court dismisses, with prejudice, Count II as it pertains to Oksenholt.

Count III

In Count III, Marvik alleges that Oksenholt was involved in a conspiracy to obstruct his access to medical records. *See* Doc. #19, p. 6. However, because the Court previously determined that Marvik should only be permitted to proceed on Counts I through III as they relate to the alleged deliberate indifference to his serious medical needs, the Court finds that Count III as it relates to Oksenholt is not properly before the Court at this time. *See* Doc. #12. Notwithstanding the Court's determination, Marvik was not entitled to access his medical records pursuant to 45 C.F.R. § 164.524, which provides in relevant part that "an individual has a right to access to inspect and obtain a copy of protected health information about the individual in a designated record set, . . . , except for: . . . [i]nformation compiled in reasonable anticipation of, or for use in, a civil, criminal, or administrative action or proceeding." As Marvik was in the custody of LCC pursuant to a court order and with the instruction that he receive treatment to attain competence to stand trial and assist his counsel in his defense, the Court finds that the medical records at issue were generated for use in a criminal proceeding. *See* Doc. #81, Ex. B. Accordingly, Marvik was not entitled to access his

medical records and summary judgment in favor of Oksenholt on Count III is appropriate.

### C. Conclusion

In conclusion, Marvik has failed to produce any evidence to substantiate his claims that Oksenholt was deliberately indifferent to his serious medical needs. *See Marks v. United States*, 578 F.2d 261, 263 (9th Cir. 1978) (conclusory allegations unsupported by factual evidence does not create a triable issue of fact). To the contrary, the record, viewed in the light most favorable to Marvik, reflects that Marvik's treatment at LCC was adequate under the circumstances. Because there is no genuine issue of material fact regarding Oksenholt's subjective knowledge and conscious disregard of a substantial risk of serious injury to Marvik, summary judgment in favor of Oksenholt on Count I is appropriate. Furthermore, because Marvik was not entitled to access his medical records pursuant to C.F.R. § 164.524, summary judgment in favor of Oksenholt on Count III is appropriate. Finally, because Oksenholt is not specifically mentioned in Count II, the Court dismisses, with prejudice, Count II as it relates to Oksenholt.

### IV. Marvik's Motion to Strike Oksenholt's Motion for Summary Judgment

Marvik contends that Oksenholt's Motion for Summary Judgment is untimely because it was not "mailed by the required date of [April 19, 2013] and not legally received by [him] until [April 24, 2013]." Doc. #93, p. 1. The Court finds that Marvik's Motion to Strike is entirely without merit. Oksenholt's Motion for Summary Judgment was properly filed and accompanied by a certificate of service in strict compliance with Local Rule 5 and the Court's January 16, 2013 Order requiring that dispositive motions be filed and served no later than April 19, 2013 (Doc. #56). Accordingly, Marvik's Motion to Strike Oksenholt's Motion for Summary Judgment is denied.

IT IS THEREFORE ORDERED that Marvik's Motion for Summary Judgment (Doc. #73) is DENIED.

IT IS FURTHER ORDERED that Oksenholt's Motion for Summary Judgment (Doc. #80) is GRANTED. The clerk of court shall enter judgment in favor of Defendant Oksenholt and

against Plaintiff Marvik on Counts I and III under 42 U.S.C. §1983.  The clerk of the court shall dismiss, with prejudice, Count II against Defendant Oksenholt.

   IT IS FURTHER ORDERED that Marvik's Motion to Extend Time to File Exhibits (Doc. #104) is DENIED as moot.

   IT IS FURTHER ORDERED that Marvik's Motion to Strike Oksenholt's Motion for Summary Judgment (Doc. #93) is DENIED.

   IT IS SO ORDERED.

   DATED this 12th day of November, 2013.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE