UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| STEVEN T. MARVIK, ) | |
| ) | |
| Plaintiff, ) | 3:11-CV-00655-LRH-WGC |
| ) | |
| v. ) | |
| ) | ORDER |
| DR. NEIGHBORS, et al., ) | |
| ) | |
| Defendants. ) | |

Before the Court is Defendants Elizabeth Neighbors, Catherine Pearson, and Tom Durant's (collectively "Defendants") Motion for Summary Judgment. Doc. #77.[1] Plaintiff Steven T. Marvik ("Marvik") filed an Opposition (Doc. # 96), to which Defendants replied (Doc. #109).

Also before the Court is Marvik's Cross-Motion for Summary Judgment. Doc. #88. Defendants filed an Opposition (Doc. #101), to which Marvik replied (Doc. #114).

## I.  Factual Background

Marvik was committed to Lake's Crossing Center for the Mentally Disordered Offender ("LCC") on July 1, 2011 pursuant to a court order from the Second Judicial District Court of the State of Nevada. Doc. #77, Ex. A, Attachment 2. LCC was charged with determining Marvik's ability to receive treatment to attain competence to stand trial. *See id.* On December 23, 2011, after concluding that Marvik was incompetent to stand trial and that there was no substantial

---

[1] Refers to the Court's docket number.

probability that he would attain competency, the Second Judicial District Court ordered his charges dismissed. Doc. #77, Ex. A, Attachment 5. On January 4, 2012, Marvik was discharged from LCC and released to the community. Doc. #78, Ex. B, p. 114.

Marvik filed his initial Complaint on September 12, 2011. Doc. #1. On October 13, 2011, the Magistrate Judge issued a Report and Recommendation (Doc. #6), which was adopted by the Court (Doc. #12), granting Marvik's request to proceed *in forma pauperis* and screening Marvik's initial Complaint. Marvik was allowed to proceed with his medical care claim under the Eighth Amendment against Defendant Oksenholt and co-Defendants Elizabeth Neighbors ("Neighbors"), Catherine Pearson ("Pearson"), and Tom Durante ("Durante"). Doc. #6, p. 8; Doc. #12, p. 2. The Court determined that no other federal constitutional claims were stated. *Id.* After Marvik was given leave to file an amended complaint, the Magistrate Judge issued a second Report and Recommendation (Doc. #25), which was adopted by the Court (Doc. #26), screening Marvik's First Amended Complaint (Doc. #19). Marvik was allowed to proceed on Counts I through III under the Eighth Amendment as to Defendant Oksenholt, and co-Defendants Neighbors, Pearson, Durante, and Steven Zuchowski ("Zuchowski")[2]. Doc. #25.

In Count I, the crux of Marvik's allegations is the denial of medical care by Oksenholt, which he asserts Neighbors, Durante, and Zuchowski knew about, but did nothing to rectify. Doc. #19, p. 4. In Count II, Marvik's allegations center around the conduct of Durante and Pearson in relation to his medical care. Doc. #19, p. 4. Finally, in Count III, Marvik alleges that Pearson failed to provide him with adequate medical care. Doc. #19, p. 6. He also references the involvement of Neighbors, Zuchowski, and Oksenholt. *Id.* The Court essentially found that, with respect to Counts I through III, Marvik stated a colorable claim for deliberate indifference to his serious medical needs against Oksenholt, Neighbors, Durante, Pearson, and Zuchowski. Doc. #25.

---

[2] To date, Marvik has not properly served Zuchowski as directed by this Court in its March 20, 2013 Order granting Marvik's Motion to Extend Time. Doc. #66. Additionally, on May 30, 2013, the Court found that the time for serving Zuchowski had expired. Doc. #119.

The time for discovery in this matter expired on March 18, 2013. Doc. #56. On April 19, 2013, Defendants filed a Motion for Summary Judgment against Marvik. Doc. #77. On May 9, 2013, Marvik filed an Opposition. Doc. #96. On May 24, 2013, Defendants filed a Reply. Doc. #109. On April 22, 2013, Marvik filed a Cross-Motion for Summary Judgment. Doc. #88. On May 13, 2013, Defendants filed an Opposition. Doc. #101. On May 31, 2013, Marvik filed a Reply. Doc. #114.

**II.     Legal Standard**

Summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, affidavits or declarations, stipulations, admissions, and other materials in the record show that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In assessing a motion for summary judgment, the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001).

The moving party bears the initial burden of informing the court of the basis for its motion, along with evidence showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). On those issues for which it bears the burden of proof, the moving party must make a showing that is "sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986); *see also Idema v. Dreamworks, Inc.*, 162 F. Supp. 2d 1129, 1141 (C.D. Cal. 2001).

To successfully rebut a motion for summary judgment, the non-moving party must point to facts supported by the record which demonstrate a genuine issue of material fact. *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000). A "material fact" is a fact "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the material facts at issue, summary

judgment is not appropriate. *See v. Durang*, 711 F.2d 141, 143 (9th Cir. 1983). A dispute regarding a material fact is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248. The mere existence of a scintilla of evidence in support of the party's position is insufficient to establish a genuine dispute; there must be evidence on which a jury could reasonably find for the party. *See id.* at 252.

Where, as here, parties filed cross-motions for summary judgment on the same claims, the Court must consider each party's motion separately and on its own merits. *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (citations omitted). Accordingly, the Court must "consider the appropriate evidentiary material identified and submitted in support of both motions, and opposition to both motions, before ruling on each of them." *Id.* at 1134.

### III. Discussion

As Defendants correctly aver, Marvik's right to receive adequate medical care while in the custody of Lake's Crossing Center ("LCC") derives from the Due Process Clause rather than the Eighth Amendment. *See Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1187 (9th Cir. 2002) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)) (where plaintiff had not been convicted of a crime, but had only been arrested, his rights derive from the Due Process Clause, not the Eighth Amendment's protection against cruel and unusual punishment). Nevertheless, "[w]ith regard to medical needs, the [D]ue [P]rocess [C]lause imposes, at a minimum, the same duty the Eighth Amendment imposes: 'persons in custody ha[ve] the established right to not have officials remain deliberately indifferent to their serious medical needs.'" *Id.* (quoting *Carnell v. Grimm*, 74 F.3d 997, 979 (9th Cir. 1996)) (applying the Eight Amendment standard where arrestee's rights derived from the due process clause).

Proving deliberate indifference under the Eighth Amendment, "requires the defendant to be *subjectively* aware that *serious* harm is likely to result from a failure to provide medical care." *Id.* at 1193. "[A] plaintiff must satisfy both an objective standard—that the deprivation was serious

4

enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniels*, 681 F.3d 978, 985 (9th Cir. 2012).  First, to establish the objective prong, "the denial of a plaintiff's serious medical need must result in the 'unnecessary and wanton infliction of pain.'" *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)).  Second, "a person is liable for denying a prisoner needed medical care *only* if the person 'knows of and disregards an excessive risk to inmate health and safety.'" *Gibson*, 290 F.3d at 1187-88 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)) (emphasis added).  "Mere negligence in diagnosing or treating a medical condition, without more, does not violate a [plaintiff's] Eighth Amendment rights." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992)) (internal quotation marks omitted); *see also Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990) (even gross negligence is insufficient to establish a constitutional violation); *Gibson*, 290 F.3d at 1189-91 (finding that the county's failure to perform a medical evaluation of the arrestee to identify and respond to his urgent medical needs in the face of "a plethora of circumstantial evidence" that the county was aware of a substantial risk of serious harm suggests that the county intentionally ignored arrestee's serious medical condition).

### A.     Marvik's Motion for Summary Judgment

As a preliminary matter, the Court finds that Marvik's Motion for Summary Judgment is untimely.  Marvik failed to comply with the Court's January 16, 2013 Order specifying that all dispositive motions shall be filed and served no later than April 19, 2013.  Marvik filed his Motion for Summary Judgment on April 22, 2013, three (3) days after the Court's specified deadline.  Nevertheless, in the interest of disposing of this case on the merits, the Court is inclined to consider Marvik's Motion for Summary Judgment.

Contrary to Marvik's assertion that he is entitled to summary judgment because "[Defendants] have not provided any factual evidence to disprove they did not violate [his] rights under the Eight Amendment for medical indifference," (Doc. #88, p. 1), Defendants need not offer evidence to negate or disprove such allegations because it is Marvik, not Defendants, who bears the

5

burden of proving the elements of his claims at trial. *See Celotex*, 447 U.S. at 323; *see also Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000) (if the moving party fails to carry its initial burden of production, the non-moving party has no obligation to produce anything). Here, Marvik has failed to produce any evidence to substantiate his claims that Defendants were deliberately indifferent to his serious medical needs. Nor has he demonstrated the absence of any genuine issue of material fact. Rather, his Motion for Summary Judgment is largely a recitation of his First Amended Complaint with obscure references to "legal evidence," of which the Court is unable to make sense.[3] Nevertheless, as the Court explains in Section B, Marvik's allegations, even if true, do not amount to a violation of his rights under the Due Process Clause. Accordingly, the Court finds that Marvik is not entitled to summary judgment on his claims against Defendants.

### B.     Defendants' Motion for Summary Judgment

As the moving party without the ultimate burden of persuasion at trial, Defendants "[have] both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." *Nissan Fire & Marine Ins. Co., Ltd. V. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). In order to carry their burden of production, Defendants must "either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Id.* (citing *High Tech Gays v. Defense Indus. Sec. Clearance Office*,

---

[3] Marvik's submissions include the following: letters he wrote to Zuchowski, the Nevada Board of Medical Examiners, the Nevada Board of Examiners for Social Workers, the Nevada Disability Advocacy and Law Center, his treatment team at LCC, Pearson, and Durrant (Doc. #19); various medical records documenting examinations and treatment after he was released from LCC, none of which reference his care or lack thereof at LCC, a copy of various LCC policies, and his own medical requests and complaints to LCC (Doc. #105, Doc. #113); the "PSYOP Operations in the 21st Century" publication, letters from the Nevada Board of Medical Examiners and Psycological Examiners denying his requests for relief, letters written by Marvik to his Public Defender, the FBI, Internal Affairs, Homeland Security, and various other entities requesting information regarding the star wars technology and other matters of which the Court has no interest, and the web search results for "congressional records star wars technology" (Doc. #116).

1  895 F.2d 563, 574 (9th Cir. 1990)).  Not only has Marvik failed to produce any evidence in support
2  of his claims against Defendants, his allegations, even if accepted as true, fall woefully short of
3  establishing the elements necessary to constitute a claim for deliberate indifference to a serious
4  medical condition.
5     Count I
6     In his First Amended Complaint, Marvik appears to assert that Oksenholt had not seen him
7  in four months, that Oksenholt refused to see him, that Oksenholt discontinued his medications
8  without an explanation, and that Oksenholt did not address his ongoing complaints of pain.  Doc.
9  #19, p. 4.  Additionally, Marvik alleges that Neighbors and Durant were aware of this situation and
10 did nothing to rectify it.  *Id.*
11    As to Count I, Marvik simply fails to provide any evidence that Neighbors and Durant were
12 subjectively aware that serious harm was likely to result from a failure to provide medical care.
13 Despite his complaints of pain, there is no indication in the record that his medical issues
14 significantly affected his daily activities or that he was in chronic or substantial pain.  *See*
15 *McGlukin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1997) (overruled on other grounds) (defining
16 a "serious" medical condition as one that "a reasonable doctor or patient would find important and
17 worthy of comment or treatment; the presence of a medical condition that significantly affects an
18 individual's daily activities; or the existence of chronic and substantial pain").  Quite the opposite,
19 Marvik's records document consistent socialization with peers and staff, performance of his job
20 without incident, and participation in physical and other recreational activities for the duration of
21 his admission to LCC.  *See* Doc. #78, Ex. B (documenting psychiatric, competency, and
22 psychological evaluations and progress notes on Marvik between July 12, 2011 and January 13,
23 2012).
24    Moreover, to the extent that Marvik's medical condition was serious—i.e., important and
25 worthy of comment or treatment—the record clearly indicates that he received around-the-clock
26 medical care by competent medical and psychological staff.  *See Gibson*, 290 F.3d at 1187 (to

satisfy their duty to provide adequate medical care, "jails must provide medical staff who are 'competent to deal with prisoners' problems'") (quoting *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982). Contrary to Marvik's assertions that Oksenholt failed to address his ongoing complaints of pain and Neighbors and Durant were aware of this and did nothing to rectify it, the record is replete with evidence that Marvik's complaints were addressed by nurses and staff members and that Oksenholt herself prescribed medication, including pain medication, to address Marvik's complaints for the duration of his admission to LCC. *See* Doc. #109, Ex. F (Medication Administration Record documenting all of the medications, including pain medication, that Marvik received on a daily basis); *see also* Doc. #81, Ex. C (documenting changes to Marvik's prescribed medications between July 17, 2011 and December 13, 2011); *see also* Doc. #77, Ex. C (documenting Durant's responses to Marvik's complaints). While Marvik may have been dissatisfied with the treatment he received, he was nevertheless able to participate in daily recreational activities and fulfill his work duties. *See* Doc. #84, Ex. D. As such, the Court finds that any deprivation in medical care that Marvik suffered while at LCC was not serious enough to constitute cruel and unusual punishment under the Eighth Amendment.

   Furthermore, Marvik points to no authority suggesting that Neighbors and Durant's response to his complaints amounted to deliberate indifference to his medical needs. Nor does Marvik cite to any evidence that raises a triable issue of fact as to whether Neighbors and Durant's actions amounted to deliberate indifference. *See Gasaway v. Northwestern Mut. Life Ins. Co.*, 26 F.3d 957, 960 (9th Cir. 1994) (mere allegations or denials do not meet the opposing party's burden of showing a genuine issue of material fact). Instead, Marvik challenges the veracity and authenticity of Defendants' evidence and cites to the medical requests and complaints he filed while in the care of LCC as proof that Defendants were deliberately indifferent to his medical needs. Doc. #19, pp. 15-39; Doc. #105, Ex. J, Ex. K. At most, these records evidence the fact that Marvik actually filed requests and complaints while in the care of LCC. However, none of these references substantiate his claim that he was denied treatment while under the care of LCC or that

Defendants knew of a substantial risk of harm and intentionally ignored Marvik's needs.  *See Liberty Lobby*, 477 U.S. at 252 (the mere existence of a scintilla of evidence in support of the party's position is insufficient to establish a genuine dispute).  As such, the Court finds that no reasonable jury could find in favor of Marvik and thus summary judgment in favor of Defendants on Count I is appropriate.

<u>Count II</u>

In Count II, Marvik alleges that Pearson and Durant delayed his competency treatment and attempted to "illegally" put him on "psych meds."  Doc. #19, p. 5.

Here, the Court finds that there was no delay in Marvik's competency treatment.  Pursuant to Nevada Revised Statute 178.450 and the Second Judicial District Court's June 30, 2011 Order, LCC had six (6) months within which to submit a report on Marvik's competency.  Doc. #77, Ex. A, Attachment 2.  Initial reports, including one submitted by Pearson and one by Durant, were submitted to the court on September 27, 2011, within three (3) months of his commitment to LCC.  Doc. #77, Ex. A, Attachment 3; Doc. #78, Ex. B, pp. 37-42, pp. 58-64.  Final reports were submitted to the court on December 20, 2011.  Doc. #77, Ex. A, Attachment 4; Doc. #78, Ex. B, pp. 43-47.  Additionally, as Marvik's team leader, Durant ensured that Marvik's treatment proceeded according to LCC policy.  *See* Doc. #77, Ex. A, Attachment 1, pp. 5-10; Doc. #78, Ex. B, pp. 93-176 (documenting treatment and progress notes on Marvik between June 12, 2011 and January 13, 2013).  As such, the Court finds that Marvik's competency treatment and evaluations were completed within the statutory time and in strict compliance with the Second Judicial District Court's June 30, 2011 Order.

As to Marvik's allegation that Pearson and Durant were trying to "illegally" put him on "psych meds," the Court finds no evidence in the record to substantiate his claim.  Because Pearson is a licensed psychologist and Durant is a licensed social worker, neither of them have the ability to prescribe medication.  *See* Doc. #77, Ex. C, Ex. D.  Furthermore, the record reflects that whenever Marvik inquired as to psychotropic and/or pain medication, he was referred to the medical/nursing

9

department.  *See* Doc. #78, Ex. B, p. 160, 162, 172 (documenting Pearson and Durant's referrals).  Even assuming Pearson and Durant encouraged Marvik to comply with the psychotropic medication prescribed by his psychiatrist, this does not indicate deliberate indifference to his medical needs.  As such, the Court finds Marvik's allegations in this regard to be entirely without merit.  On Count II, the Court concludes that no reasonable jury could rule in favor of Marvik, and, thus, summary judgment in favor of Defendants is appropriate.

Count III

In Count III, Marvik again alleges that Pearson delayed his competency evaluation and that Neighbors, Pearson, Oksenholt, and Durant were involved in a conspiracy to obstruct his access to medical records.  *See* Doc. #19, p. 6.  However, as detailed in the Court's analysis of Count II, Marvik's evaluations were completed and submitted to the Second Judicial District Court on time and in accordance with Nevada Law.  Furthermore, because the Court previously determined that Marvik should only be permitted to proceed on Counts I through III as they relate to the alleged deliberate indifference to his serious medical needs, the Court finds that Count III as to Marvik's conspiracy allegations is not properly before the Court at this time.  *See* Doc. #12.  Notwithstanding the Court's determination, Marvik was not entitled to access his medical records pursuant to 45 C.F.R. § 164.524, which provides in relevant part: "an individual has a right to access to inspect and obtain a copy of protected health information about the individual in a designated record set, . . . , except for: . . . [i]nformation compiled in reasonable anticipation of, or for use in, a civil, criminal, or administrative action or proceeding."  As Marvik was in the custody of LCC pursuant to a court order and with the instruction that he receive treatment to attain competence to stand trial and assist his counsel in his defense, the Court finds that the medical records at issue were generated for use in a criminal proceeding.  *See* Doc. #81, Ex. B.  Accordingly, summary judgment in favor of Defendants on Count III is appropriate.

///

///

10

### C. Conclusion

In conclusion, Marvik has failed to produce any evidence to substantiate his claims that Defendants were deliberately indifferent to his serious medical needs. *See Marks v. United States*, 578 F.2d 261, 263 (9th Cir. 1978) (conclusory allegations unsupported by factual evidence does not create a triable issue of fact"). To the contrary, the record, viewed in the light most favorable to Marvik, reflects that Marvik's treatment at LCC was adequate under the circumstances. Because there is no genuine issue of material fact regarding Defendants' subjective knowledge and conscious disregard of a substantial risk of serious injury to Marvik, summary judgment in favor of Defendants on Count I is appropriate. Furthermore, because Marvik's competency evaluations were completed and submitted to the Second Judicial District Court in accordance with that court's orders and Nevada law, summary judgment in favor of Defendants on Count II is appropriate. Finally, because there was no delay in his competency treatment, and because Marvik was not entitled to access his medical records pursuant to C.F.R. § 164.524, summary judgment in favor of Defendants on Count III is appropriate.

IT IS THEREFORE ORDERED that Defendants' Motion for Summary Judgment (Doc. #77) is GRANTED. The clerk of court shall enter judgment in favor of Defendants and against Plaintiff Marvik on Counts I, II, and III under 42 U.S.C. §1983.

IT IS FURTHER ORDERED that Marvik's Motion for Summary Judgment (Doc. #88) is DENIED.

IT IS SO ORDERED.

DATED this 12th day of November, 2013.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE